UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| KIMBERLY ALSTON, | : | Case No. 3:16-cv-205 |
| --- | --- | --- |
|  | : |  |
| Plaintiff, | : | District Judge Walter H. Rice |
|  | : | Magistrate Judge Sharon L. Ovington |
| vs. | : |  |
|  | : |  |
| NANCY A. BERRYHILL, | : |  |
| COMMISSIONER OF THE SOCIAL | : |  |
| SECURITY ADMINISTRATION, | : |  |
|  | : |  |
| Defendant. | : |  |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Kimberly Alston brings this case challenging the Social Security Administration's denial of her application for period of disability and Disability Insurance Benefits. She applied for benefits on August 6, 2013, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Robert M. Senander concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), the administrative record (Doc. #6), and the record as a whole.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Senander's non-disability decision.

## II.     Background

Plaintiff asserts that she has been under a "disability" since August 1, 2012.[2] She was forty-eight years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). On September 5, 2013, Plaintiff turned fifty years old and was then considered a person "closely approaching advanced age." *See id.* at § 404.1563(d). She has a limited education. *See* 20 C.F.R. § 404.1564(b)(3)

### A.     Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Senander that since her last hearing, her neck has gotten worse. (Doc. #6, *PageID* #108). She cannot turn her head as much as she used to, and if she looks down for over three to four minutes, her head starts hurting and her vision gets blurry. *Id*. As a result, she is no longer able to read the bible like she used to. *Id*. Additionally, if she turns her head, she has increased pain in the back of her head, shoulders, and down her back. *Id.* at 109. Plaintiff's pain is the worst when she gets up in the morning. *Id*.

---

[2] Plaintiff previously applied for benefits alleging disability beginning April 23, 2010. (Doc. #6, *PageID* #138). ALJ Mary F. Withum found that Plaintiff was not under a "disability" as defined in the Social Security Act. *Id.* at 150.

Plaintiff's attorney stated in response to the ALJ's asking what had changed since Plaintiff's last application, "due to chronic pain and cervical spine problems primarily, she's now likely limited to sedentary work instead of a reduced range of light work …." *Id.* at 103. He also pointed out that the previous ALJ did not find that degenerative disc disease was one of Plaintiff's severe impairments. *Id.* at 106.

Plaintiff testified that her carpal tunnel has also gotten worse, and when she walks, she has increased pain in her legs and back. *Id.* at 111. Her pain from fibromyalgia is also more severe. *Id.* at 112. As a result, she cannot do activities that she used to do. *Id.* at 113. She experiences migraines once or twice a week. *Id.* at 114. If she has medication, they last a day and a half. *Id.* at 114-15. But if she runs out of medication, they can last two to three days. *Id.* at 114.

Plaintiff has both a CPAP machine and an oxygen machine for sleep apnea. *Id.* at 110. She needs oxygen because after her sleep study, "they said I stop breathing 58 times out of a minute, three seconds at a time …." *Id*. She also experiences breathing problems when she walks up the stairs or performs other similar activities. *Id*.

Plaintiff also struggles with depression. *Id.* at 114. It causes her to not want to be around anyone. *Id*.

Plaintiff lives in a house with her daughter and grandchildren. *Id.* at 99. She sometimes tries to take care of her grandchildren but cannot because she cannot stay awake. *Id*. at 114. She used to drive but stopped after getting into a car accident in June 2015. *Id.* at 99-100. The left side of her face was bruised and swollen in the accident and she still had a knot. *Id.* at 100. Plaintiff estimated that she can stand for five to six

minutes at a time. *Id.* at 113. She does not believe that she could sit in a chair all day because it would hurt her back and legs. *Id.* She also did not think she could lift twenty pounds because of the pain. *Id.*

### B. Medical Opinions

#### i. Donald J. Kramer, Ph.D.

Dr. Kramer evaluated Plaintiff on January 3, 2014. *Id.* at 450. He diagnosed depressive disorder, anxiety disorder, and borderline intellectual functioning. *Id.* at 454. Dr. Kramer opined that Plaintiff's prognosis appeared "somewhat guarded." *Id.* He noted, "she displayed some very significant psychomotor retardation …. She was very unspontaneous, mumbled, and was soft spoken and difficult to understand." *Id.* Additionally, she had "some difficulty understanding simple questions …." *Id.* at 455.

Dr. Kramer opined that Plaintiff "appears to have the intellectual ability to perform simple tasks, although her attention and concentration and persistence and pace were somewhat weak …." *Id.* He also noted that her eye contact was poor and she looked uncomfortable. *Id.* He indicated that her limitations may be due to the fact that Plaintiff reported experiencing a migraine at the examination. *Id.*

#### ii. Paul Tangeman, Ph.D., & Carl Tishler, Ph.D.

Dr. Tangeman reviewed Plaintiff's records on January 28, 2014. *Id.* at 163-75. He diagnosed seven severe impairments: fibromyalgia, migraine, inflammatory bowel disease, obesity, affective disorders, anxiety disorders, and borderline intellectual functioning. *Id.* at 169. He opined that Plaintiff had moderate restrictions of activities of daily living; moderate difficulties in maintaining social functioning; and moderate

difficulties in maintaining concentration, persistence, or pace. *Id.* Dr. Tangeman found that Plaintiff was markedly impaired in her ability to understand, remember, and carry out detailed instructions. *Id.* at 172. She was moderately impaired in her ability to understand, remember, and carry out very short and simple instructions. *Id.* He concluded, Plaintiff "is able to perform simple 1-2 step tasks in a static environment. Limited to occasional contact with the public." *Id.* at 173.

On May 13, 2014, Dr. Tishler reviewed Plaintiff records and agreed with Dr. Tangeman's conclusions. *Id.* at 163-75.

### iii. Gary Hinzman, M.D. & Eli Perencevich, D.O.

Dr. Hinzman reviewed Plaintiff's records on December 12, 2013. *Id.* at 163-75. He adopted the previous ALJ's residual functional capacity under Acquiescence Ruling 98–4. *Id.* at 171. On May 13, 2014, Dr. Perencevich reviewed Plaintiff's records and agreed with Dr. Hinzman. *Id.* at 178-90.

## III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

5

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part

6

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Senander to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since August 1, 2012.

Step 2: She has the severe impairments of degenerative disc disease of the cervical spine, migraine headaches, history of inflammatory bowel syndrome, sleep apnea, obesity, fibromyalgia, depression, and anxiety.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do setting despite her impairments, *see Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … except she should never climb ladders, ropes or scaffolding but can occasionally climb ramps and[/]or stairs, kneel, crouch and/or crawl. [Plaintiff] may frequently handle and finger objects with the right upper extremity. She must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts and gases and exposure to poorly ventilated areas, and she must avoid all exposure to unprotected heights. [Plaintiff] retains the sustained concentration, persistence and pace for simple work of a routine and repetitive type."

Step 4: She is unable to perform any of his past relevant work.

Step 5: She could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 78-90). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 89.

V.  **Discussion**

Plaintiff contends that the ALJ weighed the medical opinion evidence improperly. She also argues that the ALJ erred in finding that she was not credible. The Commissioner maintains that substantial evidence supports both the ALJ's evaluation of the opinion evidence and the ALJ's finding that Plaintiff was not fully credible.

A.  **Medical Opinions**

Social Security Regulations recognize several different categories of medical sources: treating physicians, nontreating yet examining physicians, and nontreating yet record-reviewing physicians. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). The record in this case contains the opinions of an examining psychologist, Dr. Kramer, and four record-reviewing doctors, Drs. Tangeman, Hinzman, Tishler, and Perencevich.

Under the Regulations, "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant…." 20 C.F.R. § 404.1527(e)(2)(ii); *see* Soc. Sec. R. 96–6p, 1996 WL 374180, at *2. When considering the opinions of nontreating sources, ALJs use the same factors used when weighing treating source opinions—the examining relationship, supportability, consistency, specialization, and other factors such as the source's understanding of disability programs. 20 C.F.R. § 404.1527(a)-(d).

> [T]he opinions of State agency medical and psychological consultants … can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence …, the consistency of the opinion with the record as a whole, …, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

Soc. Sec. R. 96–6p, 1996 WL 374180, at *2

The ALJ's discussion of the medical opinions is puzzling: Rather than using the doctors' names, he states, "The undersigned considered the opinions of state agency medical consultants and other consultants and weighed these opinions and statements from no [sic] examining expert sources (Exhibits B4A and B6A)." (Doc. #6, *PageID* #87). Because all five doctors are "state agency medical consultants," it is not entirely clear who the ALJ is referring to when he uses "state agency medical consultants." The Commissioner, however, admits that the ALJ did not weigh Dr. Kramer's opinion. (Doc. #11, *PageID* #1281). Based on the Commissioner's interpretation, it appears that ALJ Senander was only addressing the opinions of the State agency record-reviewing doctors, Drs. Tangeman, Hinzman, Tishler, and Perencevich.

Unfortunately, the ambiguity does not end there. The ALJ's reasons for the weight he assigned the State agency medical consultants' opinions are vague and nonspecific:

> The findings of the state agency medical consultants that the claimant does not meet or equal listing [sic] and that she is

9

> not disabled are supported by the record. Their assessments are reasonable and generally in line with the evidence as a whole and do not conflict with the medical opinions of any treating or examining source. The findings of the state agency medical consultants are therefore adopted and incorporated to the [sic] within her residual functional capacity assessment.

(Doc. #6, *PageID* #87).

The ALJ's terse assessment of the record-reviewing doctors' opinions constitutes error under the Regulations: "[ALJs] … are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." 20 C.F.R. § 404.1527(e)(2)(ii); *see* Soc. Sec. R. 96–6p, 1996 WL 374180, at *2. The ALJ did not provide any further explanation of his findings. He does not identify what evidence supports their assessments, what makes them reasonable, or how they are consistent with other evidence of record.

The ALJ does not acknowledge that the doctors did not review all of the evidence in the record—including evidence showing a significant increase in the severity of Plaintiff's symptoms. For example, in September 2014, Plaintiff's primary care physician referred her to Samaritan Behavioral Health for mental health services. *Id.* at 578. Upon intake, Plaintiff was sent to Crisis Care after she admitted that she often thinks about hurting her husband and once attacked him with a knife with the intent to kill him. *Id.* at 573. A lethality assessment indicated she "was at moderate risk for homicide." *Id*.

10

Although the ALJ cites to these records, he does not account for impact they might have on the reviewing doctors' opinions. *See id.* at 87. As Plaintiff correctly noted, "Homicidal ideation is not a positive personality trait for obtaining substantial gainful employment." (Doc. #8, *PageID* #1264). And, this evidence suggests that Plaintiff's difficulties in maintaining social functioning may be more severe than what the State agency physicians concluded.

The ALJ also fails to mention that the professional counselor at Samaritan Behavioral Health, Jessica Nye, diagnosed Plaintiff with post-traumatic stress disorder (PTSD) after she scored very high on the PTSD Checklist (PCL). (Doc. #6, *PageID* #s 573, 595). She also diagnosed major depressive disorder and intermittent explosive disorder. Ms. Nye opined that Plaintiff needed to continue treatment, as she was "experiencing panic attacks nearly every day associated with past trauma[;] [and she] has difficulty controlling anger and is at risk of harming herself or others." *Id.* at 595.

Further, despite adopting the opinions of the State agency consultants, ALJ Senander did not incorporate all of their diagnoses and limitations. Dr. Tangeman and Dr. Tishler found that borderline intellectual functioning was one of Plaintiff's severe impairments. In addition, Dr. Kramer diagnosed borderline intellectual functioning. Yet, the ALJ did not include it as a severe impairment and failed to address why he did not.

The ALJ also failed to weigh the opinion of the consulting psychologist, Dr. Kramer. The Commissioner acknowledges this but contends "any error in not discussing its weight was harmless because it would not cause the ALJ's ultimate decision to change." (Doc. #11, *PageID* #1281) (citing *Rabbers,* 582 F.3d at 658). The

11

Commissioner further asserts that the ALJ "effectively gave great weight to Dr. Kramer's opinion by adopting two medical opinions that highly regarded Dr. Kramer's opinion." (Doc. #11, *PageID* #1281 (citing Doc. #6, *PageID* #87). However, the record reviewing physicians that gave Dr. Kramer's opinion great weight only indicated it was given great weight because "it is written by an examining source and is consistent with evidence in file." (Doc. #6, *PageID* #185). The ALJ's failure to weigh Dr. Kramer's opinion prevents the Court from evaluating whether his decision is supported by substantial evidence and constitutes error under the Regulations and Rulings. *See Wilson*, 378 F.3d at 546 ("'[A] procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway.' To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability the violate the regulation with impunity and render the protections promised therein illusory.") (quoting *Mazaleski v. Treusdell,* 562 F.2d 701, 719 n. 41).

**B.**     ***Drummond***

ALJ Senander found that "there is new and material evidence that precludes adoption of the prior mental residual capacity." (Doc. #6, *PageID* #78). As a result, he modified ALJ Withum's assessment of Plaintiff's mental RFC. This change in Plaintiff's RFC raises questions concerning res judicata.

The Sixth Circuit addressed this issue in *Drummond v. Commissioner of Social Security,* holding, "the principles of res judicata can be applied against the Commissioner. When the Commissioner has made a final decision concerning a

claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 126 F.3d 837, 842 (6th Cir. 1997) (citations omitted). "The burden is on the Commissioner to prove changed circumstances and therefore escape the principles of res judicata." *Id.* at 843.

After *Drummond,* the Commissioner issued an Acquiescence Ruling mandating ALJs in Ohio (and other states within the Sixth Circuit) to follow *Drummond* by applying res judicata to a prior assessment of a claimant's residual functional capacity and other prior findings made as part of a sequential evaluation. The Acquiescence Ruling explained:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law....

AR 98–4(6), 1998 WL 283902, at *3 (Soc. Sec. Admin. June 1, 1998).

In November 2012, ALJ Withum found, "In light of [Plaintiff's] depression, she is capable of performing simple and complex tasks in an environment free of fast-paced production requirements with only occasional changes in the work setting and occasional interactions with the public, coworkers, and supervisors." (Doc. #6, *PageID* #143).

ALJ Senander agreed with ALJ Withum that Plaintiff could perform simple tasks but he did not find that she could perform complex tasks. *Id*. at 84. The record supports this limitation. Dr. Tangeman and Dr. Tishler explain that Plaintiff's additional

13

diagnoses of anxiety disorder and borderline intellectual functioning resulted in additional limitations, "namely [Plaintiff's] ability to do complex tasks." *Id.* at 173. Similarly, Dr. Kramer opined Plaintiff could perform simple tasks. *Id.* at 455.

ALJ Senander made two significant alterations to ALJ Withum's findings. ALJ Senander (1) did not restrict Plaintiff to environments free of fast-paced production requirements, and (2) did not find that Plaintiff needed only occasional changes in the work setting.

In order for ALJ Senander to find Plaintiff more able to engage in work in these two ways—more able, that is, than ALJ Withum found—*Drummond* required ALJ Senander to rely on new and material evidence. 126 F.3d at 842 ("We reject the Commissioner's contention that the Social Security Administration has unfettered discretion to reexamine issues previously determined absent new and additional evidence.").

ALJ Senander neglected to explain why he did not limit Plaintiff to environments free of fast paced work. ALJ Withum explained in her decision, "Dr. Bonds indicated [Plaintiff] was moderately limited in her ability to handle stress because pain and mood caused problems working with production demands." *Id.* at 145. Similarly, Dr. Kramer noted, "she was very slow in her thought, speech, and response time. Her concentration and focus were rather weak and she acknowledges that she has received complaints about her past work performance because of her slowness, memory problems, and her tendency to be distracted." *Id.* at 455. Dr. Tangeman and Tishler found that she was moderately limited in her ability to complete a normal workday and workweek without interruptions

14

from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. The ALJ's removal of this limitation is not supported by substantial evidence.

ALJ Senander also neglected to explain why he did not find Plaintiff was limited to only occasion changes in the work setting. Dr. Tangeman and Dr. Tishler found that Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting and noted that Plaintiff needed a static environment. The ALJ also did not explain why he did not adopt that portion of the State agency doctors' opinion and does not provide any explanation for the change.

The fact that the ALJ omitted discussion of the new and material evidence that led him to find Plaintiff more able than ALJ Withum found her reveals a *Drummond* violation and tends to confirm that he was not exaggerating when he said, "I don't like to do extra work." *Id*. at 103.

Accordingly, Plaintiff's statement of errors is well taken.[3]

**C. Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*,

---

[3] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's challenge to the ALJ's assessment of her credibility is unwarranted.

378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of §405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to

16

determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Kimberly Alston was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

Date:  June 19, 2017                                              *Sharon L. Ovington*
                                                                  Sharon L. Ovington
                                                                  United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).